JAMES MILLER, Appellee, v. E. M. KOOKER, Appellant.

No. 39550.

MARCH 12, 1929.

REHEARING DENIED JUNE 24, 1929.

688

*Stipp, Perry, Bannister & Starzinger* and *Nichol & Nichol,* for appellant.

*Lee, Steinberg & Walsh,* for appellee.

MORLING, J.—I.   Plaintiff, while crossing from the south side of Main Street in Ames northwardly along the west side of the Kellogg Avenue intersection, was struck by defendant's east-wardly moving delivery truck, sustaining there-by serious injuries.   The city of Ames has up-wards of 9,000 inhabitants, besides students. This intersection is one of the busiest in the city.   Main Street runs east and west.   At the place in controversy, its sidewalks are 13 feet wide, distance between curbs 54 feet.   A street-car track of the usual width runs along the center of the street.   Kellogg Avenue at this intersection is provided with 10-feet sidewalks and is 46 feet in width between curbs.   Both streets are paved.   The accident occurred on the afternoon of January 2d, when the streets were icy.   There is testimony tending to show that plain-tiff, who was 75 years old, was proceeding north on the west side-walk of Kellogg Avenue.   A few feet to the west of the southwest curb of the intersection, an automobile was parked diagonally from northwest to southeast.   There is evidence tending to show that other automobiles were similarly parked along the south side of Main Street west of the intersection.   When plaintiff reached the south curb of Main Street, he paused, looked in each direction, could see 30 or 40 feet west along the car line, saw no approaching car, and stepped upon the paving; and, after taking two or three steps,—7 or 8 feet,—and while within the shelter zone of the parked automobiles, he was struck by the right fender of defendant's delivery truck, which was coming from the west at a speed of 18 to 20 miles per hour, without warning signal, and which, when it struck plaintiff, was swerving slightly to the right, or south.   Just as plaintiff saw the radiator, he tried to stop, and threw himself back, but was immediately struck.   He was within the sidewalk line.

We do not undertake the useless task of setting out the countervailing contentions.   It is sufficient to say that the ques-tions of the negligence of the driver of defendant's truck and of plaintiff's contributory negligence were for the jury, and that the

evidence is not such as to require a reversal of the order denying new trial for insufficiency of evidence.

II. Defendant assigns as error misconduct in bringing and keeping prominently before the jury the fact that defendant carried casualty insurance, was not the real party concerned in the recovery asked, and would not personally suffer from an adverse verdict. Defendant, in making his case, called a physician for the Travelers' Life Insurance Company, from whose cross-examination it appeared that defendant was insured in that company. Plaintiff, therefore, argues not only that he had the right to show who was the real party defendant in interest, but that any error or misconduct in his procedure was waived. In the examination of the jurors on their *voir dire*, plaintiff, over objection, persisted in inquiring of the jurors whether they carried insurance on their cars, whether they were interested in any way in any organization writing insurance against liability for damages caused by accident, whether they wrote such insurance, or whether it was their duty to adjust claims for personal, injuries. The jurors to whom these inquiries were addressed consisted largely of farmers and farm wives. Plaintiff knew that defendant was insured in the Travelers' Company, for one member of the panel was an agent of that company, and, in response to an inquiry by defendant's counsel, plaintiff's counsel, in the absence of the jury, stated that he knew of this relationship. Plaintiff's interrogatories to the jurors did not go to the question whether they themselves had caused injuries or were charged with having done so or with being under liability therefor or were connected with the Travelers' Company, nor did the plaintiff's inquiries of the jurors have any interest in the question of whether they were of careful or negligent habits in the operation of their automobiles. Defendant's counsel proposed to plaintiff's counsel that the agent juror referred to might be excused, and that it would be unnecessary to examine him in the presence of the whole jury, in order to develop "his agency," to which plaintiff's counsel responded:

"I do not know of any reason why we should select this jury in secret chambers. I think we have a right to select this jury just like we select any other jury."

The court ruled that, if plaintiff's counsel did not want to agree to defendant's proposition, he did "not have to." It is urged with much vehemence that plaintiff had the right to know who was, and to bring out into the open, the real party in interest in defending the lawsuit, and to ascertain from the members of the panel whether they were similarly interested, or had similar business connections. It is, for present purposes, a sufficiently complete statement of the case to say that the two questions to be tried were: First, was defendant's driver negligent, and second, was plaintiff negligent? The fact that defendant's liability for his driver's negligence, if any, was insured, could have no possible legitimate bearing upon the proper determination of these questions. If defendant was insured, he was still not responsible if his driver was not negligent. The insurance company agreed to be responsible only for the negligence of the defendant or of his servants, not for injuries which were not chargeable to the fault of the defendant, or which were chargeable to the fault of the plaintiff. Casualty insurance, like other insurance, is justified as an economic provision. The chief beneficiaries in such insurance are those who have meritorious claims for injuries for which, without the insurance, there might be no responsible recourse. If the fact of the insurance is to work against the insurance company, the insurance and its beneficent purpose will destroy itself, and the principal sufferers will be those who suffer injuries which ought to be recompensed. Plaintiff argues that insurance companies prefer jurors who are not insured. The implication is that the trial of such a lawsuit degenerates into a contest between the plaintiff to get insured jurors and the defendant to get uninsured jurors. The parties to a lawsuit may ordinarily rightfully seek information as to who their respective opponents are, in order that they may be properly advised in exercising their rights of challenge. It is, however, utterly repugnant to a fair trial or to the securing of the rendition of a just verdict on the facts that the jury should, by direction or indirection, be informed that the defendant will not suffer from an adverse verdict, and that some corporation will bear the consequences. The court, on the oral argument, was impressed with the view that the plaintiff's conduct of the trial was, whether designedly or undesignedly, with the effect of diverting the minds of the jury from the real controversy to the proposi-

tion that a verdict against the defendant would not hurt him, but that it would have to be paid by an insurance company; and a perusal of the record and of the plaintiff's printed argument has not in any degree lessened this impression. Plaintiff's conduct of the trial in the respects mentioned was very prejudicial. Prospective jurors were further asked such questions as:

"Do you have any feeling that the driver of an automobile has any superior rights to take the street intersection to that of a pedestrian?" "Have you any feeling that an old man who attempts to cross the street must do so at his own peril?"

Concededly, such questions did not apprise the jurors of the correct rules of law which should govern their determination of the case. These and the other inquiries that have been adverted to were such as to naturally give to the minds of the jurors a preconception or a viewpoint other than that of one of the impartial determination of the questions of fact which it was necessary for them to pass upon, and which they should pass upon, without respect to persons.

It is true that the arts of advocacy within their proper province may not be condemned, nor is it possible, from a practical standpoint, to exclude all possibility of prejudice and of unjust argument or inference. It is true that, in the case now before us, the examination of the jurors embraced a wide range of subjects, and that plaintiff's counsel, in his opening argument, stated that the attorneys were officers of the court, as well as advocates; that, "in their zeal for their client, they perhaps step out of bounds * * * that if, in what I say, I seem to go beyond what is fair in this case, * * * I want you to discount what I say to that extent;" that, "before I go into the facts in this case, I want to say that the defendant in this case is Mr. Kooker, and no one else * * * We are asking nothing as a result of bias or prejudice that you may have against some person or corporation; on the other hand, we ask your verdict to be not influenced because you may be a friend of Mr. Kooker, or a business associate, or your feelings for the moment that any verdict you may render will be a hardship upon Mr. Kooker, or that it will affect him in a business way. We don't want your verdict in this case enhanced a single cent because of somebody else in this case, or reduced a single cent because it may come out of Mr. Kooker's

pocket.'' It is also true that the court told the jury that, if it should be the fact that defendant carried liability insurance, it did not change or enlarge the liability, if any; that this was not a proper issue, and should not be allowed to influence them in any degree. The references to the matter of liability insurance were prejudicial misconduct, not cured by the plaintiff's disclaimers or the court's instructions. We are of the opinion that, in the heat of conflict, the jury had been impressed with a wrong conception of the questions for their determination and of their duties as triers of fact, and that this misconception was in no degree mitigated by counsel's assertion, at the close, that they were asking that the verdict be not influenced because ''any verdict you may render will be a hardship upon Mr. Kooker.'' The poison had long previously penetrated all of the veins and capillaries of the case. The appeal is ruled by our former decisions. *Rudd v. Jackson*, 203 Iowa 661, 663, 667; *Ryan v. Trenkle*, 199 Iowa 636; *Ryan v. Trenkle*, 203 Iowa 443. See, also, *Simpson v. Foundation Co.*, 201 N. Y. 479; *Carter v. Walker* (Tex. Civ. App.), 165 S. W. 483; *Martin v. Lily*, 188 Ind. 139 (121 N. E. 443); *O'Hara v. Lamb Const. Co.* (Mo. App.), 197 S. W. 163; *Pettit v. Goetz Sales Co.*, 221 Mo. App. 966 (281 S. W. 973); *Standridge v. Martin*, 203 Ala. 486 (84 So. 266); *Burgess v. Germany-Roy-Brown Co.*, 120 S. C. 285 (113 S. E. 118); *Wilson v. Wesler*, 27 Ohio App. 386 (160 N. E. 863); *Roman v. J. G. Turnbull Co.*, 99 Vt. 280 (131 Atl. 788); *Papke v. Haerle*, 189 Wis. 156 (207 N. W. 261); *Adams v. Cline Ice Cream Co.*, 101 W. Va. 35 (131 S. E. 867); *Wilkins v. Schwartz*, 101 W. Va. 337 (132 S. E. 887); *Rosumny v. Marks*, 118 Ore. 248 (246 Pac. 723).

Plaintiff urges that defendant requested instructions to the effect that the question whether defendant had liability insurance had not been tried, and should be given no consideration,  and that thereby the defendant himself brought the matter to the attention of the jury, is precluded from now objecting thereto, and has waived the error. But when these instructions were asked, the plaintiff's misconduct had already been committed and the injury inflicted. It does not lie with plaintiff to urge that, because defendant took advantage of the only remaining possibility of neutralizing plaintiff's misconduct, defendant induced

the misconduct or assumed responsibility for it or waived it. *Hansen v. Hough*, 177 Iowa 93.—*Reversed.*

ALBERT, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.