HARRIET M. LEWIS, APPELLEE, V. DONALD BECKARD, APPELLEE: JENNINGS HAGGERTY, APPELLANT.

FILED MAY 29, 1929. No. 26616.

*Rosewater, Mecham & Burton* and *Frederick J. Patz,* for appellant.

*L. R. Doyle,* for appellee Lewis.

*Wilmer B. Comstock* and *John H. Comstock,* for appellee Beckard.

Heard before GOSS, C. J., GOOD, THOMPSON, EBERLY and DAY, JJ., and LIGHTNER and REDICK, District Judges.

LIGHTNER, District Judge.

Suit by Harriet M. Lewis against Donald Beckard and Jennings Haggerty, for injuries sustained in an automobile accident on October 20, 1927, at the intersection of D and Twenty-sixth streets in Lincoln. The defendant Haggerty filed a counterclaim against the plaintiff. The jury found for the plaintiff against the defendant Haggerty in the sum of $5,000. The jury found in favor of the defendant Beckard. The court directed a finding against defendant Haggerty on his counterclaim. Judgment was entered on the verdicts and motions and supplemental motions of Haggerty for a new trial overruled. Plaintiff has not appealed from the verdict and judgment against her in favor of the defendant Beckard.

The main reliance of defendant Haggerty for a reversal is alleged misconduct of plaintiff's counsel in continually claiming before the jury that the defendant Haggerty was protected by indemnity insurance. He also alleges misconduct of a juryman, and claims that he is entitled to a new trial on account of newly discovered evidence. The answer of plaintiff is a denial of the alleged misconduct, and that the verdict rendered was the only one possible under the law and the evidence. Other misconduct is complained of, but inasmuch as it is not likely to occur at a subsequent trial of the case it will not be discussed in this opinion.

The accident in question happened at about 4:45 on the afternoon of October 20, 1927, at the intersection of D and Twenty-sixth streets in Lincoln. D street runs east and

west and Twenty-sixth runs north and south. Mrs. Lewis, driving a Buick coach, was approaching the intersection from the east. The defendant Haggerty was approaching the same intersection from the west, and the defendant Beckard was approaching it from the south. The view of defendant Haggerty to the south as he approached the intersection was obstructed by an embankment and he was therefore unable to see Beckard until he was almost into the intersection. Twenty-sixth street inclines downward from the south toward the intersection and Beckard was therefore traveling downhill. The evidence of the witnesses varies considerably as to the speed at which defendant Haggerty and defendant Beckard were approaching the intersection. Some placed the speed as low as 10 or 12 miles an hour and others fixed it as high as 30 or 35 miles an hour. It seems quite clear from the evidence, however, that neither of the defendants had his car under such control as good judgment and the law would require in entering upon an intersection, dangerous on account of the view being obstructed. It seems to be uncontroverted that Mr. Beckard was unable to stop his car by the application of his brakes at a distance of 30 to 35 feet from the accident, and it seems also that Mr. Haggerty either did not have his car under control or failed to exercise proper care when he saw that an accident was imminent, since he applied the gas and turned to the left and toward Mrs. Lewis' car. Beckard's car struck the Haggerty car on the right side of the same, near the rear wheels, and threw it against Mrs. Lewis' car and she received the injuries for which this suit is brought. By no stretch of the imagination can any fault be ascribed to Mrs. Lewis. Although she had the right of way over the Beckard car, she did not assert it, but when she saw the two cars approaching she drew up to the curb on the north side and stopped a distance back from the intersection, which some of the witnesses say was 5 feet and others 20 or 25 feet. That Mrs. Lewis was injured seems also to be conclusively established from the evidence, but there is a sharp conflict

as to the extent of her injuries. Some of the physicians claim that they were comparatively unimportant and others that they were quite serious. The injuries claimed by her were a cut on the left hand from which she bled profusely and which required three stitches to close, an injury to her knee, but principally various injuries to her back, including a strain of the sacro-iliac joints.

Before proceeding to the main question in the case we will refer briefly to some minor matters complained of by defendant Haggerty. His claim that the juror Bucklin was prejudiced has not been established. Mr. Bucklin was asked if he knew of any reason why he could not sit as a fair and impartial juryman and he answered in the negative. It developed after the trial that his own wife had an injury similar to the one complained of by Mrs. Lewis and defendant Haggerty contends that such fact made him an unfair and prejudiced juryman. The fact that his own wife was suffering from similar injuries, if it had been brought out in the *voir dire* examination, might have been ground for challenge for cause in the discretion of the trial court, but in our opinion it would not have been error to overrule such challenge if he said, as he did in his affidavit made after the trial in opposition to the motion for new trial, that he could be fair regardless of the condition of his wife. The other proposition is that there is newly discovered evidence consisting of certain X-ray pictures taken by Dr. Smith. However, it appears that X-ray pictures of plaintiff's injuries were taken and introduced in evidence, and it further appears that defendant Haggerty's counsel knew of the existence of the Smith X-ray pictures during and before the trial. This contention must, therefore, be overruled.

It will be necessary to examine with considerable care the claim of misconduct of plaintiff's counsel. Part of the alleged misconduct is the following question, or the substance thereof, to each of the jurymen examined for service on the case, namely: "Are you a stockholder in an insurance company known as the International Indemnity Com-

pany of Los Angeles, California?" This question was asked to 18 proposed jurymen, all of whom answered that they did not hold stock in said company. Even in states which do not adhere to the rule laid down in *Jessup v. Davis*, 115 Neb. 1, proposed jurymen may be asked with reference to stock in an indemnity insurance company which has issued a policy to protect one of the litigants. While the question was a proper one to ask, it might have been asked to the jury as a whole, but the method of examining the jury is largely within the discretion of the trial court. No request was made to require counsel for plaintiff to ask the jury the question collectively and no objection on account of its repetition. Most courts leave the method of examining the jury pretty much to the examining counsel, and the fact that he examined each juryman individually and asked him a proper question instead of asking the same question collectively would not constitute error, especially when the record fails to show an objection on that ground. In *Egner v. Curtis, Towle & Paine Co.*, 96 Neb. 18, it is held:

"Where a defendant, in a personal injury action, is indemnified by an employers' casualty insurance company, it is proper for plaintiff's counsel to show such fact when impaneling the jury, and to inquire of each juror upon his *voir dire* if he is a stockholder or agent, or in any manner interested in such company."

Furthermore, the defendant, when he came to examine the jury, asked the same question with regard to the Union Automobile Company which he claims had issued a policy to Mrs. Lewis or her husband. The filing of a counterclaim against Mrs. Lewis was so far-fetched in view of all the circumstances surrounding the accident that one suspects that it was filed in entire bad faith and for the sole purpose of enabling counsel for defendant Haggerty to convey to the jury the idea that Mrs. Lewis was protected by insurance and did not have to rely for recovery on defendants. If it was misconduct for plaintiff's counsel to ask about the International Indemnity Company, it was likewise miscon-

duct for defendant's counsel to ask about the Union Automobile Company, and when both parties are guilty of the same misconduct one cannot complain about the misconduct of the other. We do not feel that any prejudice resulted to defendant Haggerty on account of the *voir dire* examination of the jury.

Defendant Haggerty objected to the following part of plaintiff's counsel's opening statement:

"The testimony will show that we are asking something—it does not make a great deal of difference, but the testimony will show clearly, I believe, that Mr. and Mrs. Haggerty either one of them have their cars insured to protect them in cases of this kind."

The objection was overruled and exception duly taken. Mr. Comstock, who represented the defendant Beckard, made the following statement with regard to insurance, which was not objected to, to wit:

"I just want to make one other thing. I just want to tell you gentlemen of the jury that Mr. Beckard has no insurance of any sort; he stands here alone to defend himself the best he can, without any insurance or insurance company to help him."

The trial then proceeded and lasted for several days, during which time none of the parties made any reference to insurance, so far as the record discloses, until the arguments to the jury were made. During Mr. Doyle's opening argument to the jury the following occurred:

"He was going to prove there was not any insurance on his side of the case. Has he proved any of it? If he has, my ears have been closed to proving any of those things he was going to show. Mr. Rosewater: Counsel excepts to the statement that counsel set out to prove there was not any insurance in the case. Mr. Doyle: You made that in your opening statement. Mr. Rosewater: Defendant objects as prejudicing the case, immaterial, and it is misconduct of the counsel to repeat. Mr. Doyle: I was just touching on his opening statement, your Honor. By the Court: Anyway, his opening statement was not in the record and

the subject of insurance will be eliminated from the argument."

Up to this point we cannot feel that there was error sufficient to justify a reversal. The record shows quite clearly that up to this point at least the plaintiff was proceeding in good faith. In fact, he stated in oral argument before this court that his failure to prove that defendant Haggerty was insured was simply an oversight. The record also indicated that counsel for defendant Haggerty stated in his opening statement that he would prove that his client was not protected by insurance and the court stated at that time that he would permit him to make such proof. Where the question of insurance is so freely mentioned by all counsel connected with the case the misconduct of plaintiff's counsel to work a reversal must be more serious than where he alone interjects the idea of insurance into the case. However, it must not be overlooked that the harm of any subsequent references to insurance or to a corporation or company would be intensified by all of these prior references to insurance in the *voir dire,* opening statement, and argument. Further on in Mr. Doyle's argument the following occurred:

"One of the parties comes to you and says, 'Well, his father is a banker.' They did not show that. They thought he would be. When they filed that they thought he might be on the board of directors. He was not on that. He was a drug-store man. Lay it on Beckard—let me go— let me go back to Omaha and report to the company that he did not get stuck. Mr. Rosewater: Defendant objects to that as a repetition of the same course of misconduct; no evidence of any company in Omaha or anywhere else that I represent. By the Court: What is it that you complain of? Mr. Rosewater: That I would go back to Omaha and report to the company. There is no company in Omaha, in the evidence, in any way, shape or form."

In his closing argument to the jury Mr. Doyle said: "It certainly appears in this case that a corporation is without heart or soul." No objection was made to this state-

ment.   At the close of his argument Mr. Doyle said:   "Take care of her as though it were your own case, fairly and impartially.   Mrs. Lewis will be satisfied and I think everybody will be satisfied, and in doing that I don't think you are going to harm any of the individuals on the other side of the table."   Defendant Haggerty claims that this is in effect a statement to the jury that there was a corporation to protect defendant Haggerty and therefore he, as an individual, would not suffer.   We cannot give these remarks so sinister a meaning, but think all that Mr. Doyle meant was that the defendants in the case, those on the other side of the table, would not be harmed if Mrs. Lewis was given fair and impartial treatment.   The court in his instructions admonished the jury as follows:

"There has been no evidence introduced as to the existence of insurance in this case and, even if there had been, this jury under their oath and statements to consider this matter fairly and without prejudice should decide this case solely on its merits and under the law, without reference to the question of whether there may or may not be insurance interests represented, which has nothing whatever to do with the question as to who, if any one, was at fault in this matter."

Counsel for plaintiff was guilty of misconduct in referring to the question of insurance in his arguments to the jury after the court and counsel called his attention to the fact that there had been no proof of insurance and after the court had admonished him that the subject of insurance should be eliminated from the argument.   Unmindful of the fact that there was no proof of insurance and of the admonition of the court, counsel persisted in his misconduct and twice again refers to the subject.

In *Hall v. Rice*, 117 Neb. 813, counsel for plaintiff persisted in the same misconduct after being admonished by the court.   A judgment for plaintiff was reversed.   The misconduct in that case while more flagrant was of the same general character as the misconduct complained of in this case.   In *Johnson v. Jensen, ante,* p. 1, the case was

reversed on account of misconduct of counsel. It is said in the opinion of the court:

"From time immemorial the Anglo-Saxon race has been firmly committed to the proposition that, when a jury is impaneled to try a law action, such jury is the sole trier of disputed questions of fact. It follows that it is highly improper for counsel to make remarks within the hearing of the jury, aside from the regular argument, which might tend to create a prejudice for or against either party litigant. The law contemplates a fair and impartial trial on the merits, and unfair conduct on the part of counsel having a tendency to prevent this invaluable right is deserving of rebuke."

In an opinion written by Judge Sullivan many years ago in the case of *Ashland Land & Livestock Co. v. May,* 59 Neb. 735, it is said:

"We have little patience with counsel who deliberately seek to achieve success by lawless methods; and we do not hesitate, in any case, to deprive them of advantages thus obtained. In the performance of professional duties, counsel should endeavor always to conform their own conduct to the law which they have been commissioned to assist in administering."

It seems therefore that defendant Haggerty is entitled to a new trial on account of the misconduct of plaintiff's counsel, unless it appears from the whole record that he was not prejudiced by such misconduct. The fact that Haggerty was to blame to some extent for the accident and that Mrs. Lewis was not to blame at all is so clear from the record that we would hesitate to reverse the case if that was the only consideration before us. However, there is a very sharp dispute as to the extent of Mrs. Lewis' injuries, and it seems quite probable to us that the amount of recovery was or might have been affected by the prejudicial remarks of counsel. Dr. W. G. Rickard, of Lincoln, was plaintiff's attending physician for the injuries in question. He took three stitches to close the wound in her wrist, which he says healed nicely and was not serious.

He examined her knees, wrist, back, and so on, and did not find anything more than minor, temporary injuries. He treated her nine times, the last time on November 2, 1927, and she came to his office except on the first occasion immediately after the accident, and he discharged her on November 2, 1927, less than two weeks after the accident, and in his opinion, "so far as any injuries from the accident of October 20, 1927, were concerned, he considered her injuries and condition as healed and cured when he discharged her." He had the benefit of X-rays in making up his mind as to her condition. Several other doctors were positive in their testimony that she was not suffering at the time of the trial from any injuries resulting from the accident. Other doctors of equal credibility, but ones who did not see her for a considerable time after the accident, described her injuries as serious, and if the case had been presented fairly we would not disturb the verdict of the jury; but where the question is close and there has been grave misconduct on the part of counsel and where an examination of the entire record convinces the court that the verdict was probably influenced by the misconduct, the case must be reversed and a new trial ordered.

Another fact in the case which leads us to believe that the misconduct of counsel affected the verdict is the finding in favor of the defendant Beckard. A careful reading of the record by the author of this opinion convinces him that the defendant Beckard was at least equally negligent with the defendant Haggerty. There is no question at all in our judgment but that the defendant Haggerty entered the intersection first and therefore was entitled to the right of way. He was probably not going as fast as the defendant Beckard, and defendant Beckard did not have his car under proper control, for although he applied his brakes 30 to 35 feet back from the accident, and although the defendant Haggerty turned somewhat to the left to avoid a collision, it was impossible to do so, and as a result the accident happened.

Here again the question was for the jury, but the fact

that the jury excused the defendant Beckard and held the defendant Haggerty would indicate that they were prejudiced by the misconduct of counsel. There is no intention to enlarge to any extent the rule laid down in *Jessup v. Davis*, 115 Neb. 1. The fact that a defendant has indemnity insurance is never a reason for finding against him, and counsel should not so contend to the jury, and should not inject the fact that there is protecting insurance in the case for the purpose of prejudicing the jury. It is simply a circumstance that may be considered in connection with all the other facts and circumstances in the case in weighing the evidence. Nothing said in this opinion is intended to in any way prejudice Mrs. Lewis' interests at a future trial of the case.

It is scarcely necessary to discuss defendant Haggerty's counterclaim. There is no evidence in the record indicating that Mrs. Lewis was negligent, and the district court was right in directing a verdict in her favor on such counterclaim. And in our opinion the finding of the jury in defendant Beckard's favor is not presented by this appeal. It is a matter which does not affect the defendant Haggerty adversely and about which he therefore has no right to complain. The general rule is that there is no contribution between joint tort-feasors. However, we do not express an opinion on that point, for the defendants Haggerty and Beckard were not adverse parties in this suit. No question of the liability of one of these defendants to the other was being tried. If Mrs. Lewis finally obtains a judgment against Haggerty and he is compelled to pay it, it could not be pleaded as *res judicata* in a suit by Haggerty against Beckard for contribution. *Warren v. Boston & M. R. Co.*, 163 Mass. 484. The plaintiff might have appealed from the verdict and judgment in Beckard's favor, but she did not do so.

For the reasons above stated, the judgment is hereby reversed and a new trial ordered as to the issues between plaintiff and the defendant Haggerty.

REVERSED AND REMANDED.