No. 12,675.

PHELPS *v.* LOUSTALET ET AL.
(14 P. [2d] 1011)

Decided September 26, 1932.

Mr. EDWARD L. WOOD, Mr. FRANK B. GOUDY, for plaintiff in error.

Mr. REES D. REES, Mr. C. E. WAMPLER, Mr. L. B. GOLDMAN, for defendants in error.

*In Department.*

MR. JUSTICE MOORE delivered the opinion of the court.

LOUSTALET sued Phelps and Mayfield to recover damages for personal injuries alleged to have been sustained as the result of a collision between an automobile, owned by Phelps, an automobile dealer, and driven by his employee, Kirby, and a car owned and driven by Mayfield. The jury returned a verdict in favor of plaintiff Loustalet and against Phelps for $8,134.00. To reverse the

judgment entered thereon, Phelps prosecutes this writ, among other assignments contending that the court erred in denying his motion for a mistrial after testimony had been admitted regarding liability insurance.

Kirby was driving with Loustalet on the Denver-Greeley paved highway about a mile north of Platteville on September 20, 1927, about dusk, at or near a point where a county road crosses the paved road at right angles. Mayfield, a farmer, had been driving his car on an easterly road and was turning north at this intersection when the collision occurred. The contact was between the right front wheel and fender of the Mayfield car, and the left rear wheel and fender of the Kirby car, and occurred, as Kirby and plaintiff testified, while both cars were in the intersection, although Mayfield testified that he had made his turn and had proceeded from thirty feet to sixty feet beyond the intersection of the road when the Kirby car flashed by on his right. As a result of the collision the Kirby car was badly damaged and the plaintiff injured. Loustalet claimed his injuries were the result of the negligence of Kirby and Mayfield, in that Kirby was driving at an excessive rate of speed, among other charges, and that Mayfield failed to yield the right of way, failed to sound a warning and negligently turned into the Greeley road ahead of the Kirby car.

During the direct examination of the plaintiff the following colloquy occurred:

"Q. Do you recall whether or not Mr. Kirby said anything just at the instant of the collision? Do you remember? A. No.

"Q. Do you remember whether or not Mr. Mayfield said anything at the instant of the collision? A. There was such a crash you couldn't have heard anything, if either one of them had said anything.

"Q. Did you speak to either of them that you thought it was just that you should be recompensed in damages for your injuries? Did you ever speak to either of them

about that? A. Not to Kirby, and not to Mayfield either.

"Q. What, if anything, was ever said about that? A. I spoke to Mr. Phelps about that, once.

"Q. And what did he say? A. I told him about the condition—

"Mr. Wood: We object to this examination as having absolutely no bearing on the issues in this case.

"Q. I will ask you first to state when and where it was that you had this conversation with Mr. Phelps. A. It was at his place of business, here in Greeley.

"Q. And when? A. Oh, I don't know just the date, but it was a short time after the accident.

"Q. Was there anybody else present at the time? A. No.

"Q. Now what if anything did he say to you then? A. I said to him, 'Jay, I guess I will have to sue you,' and he says, 'Go ahead, that is why I carry insurance.'

"Q. Was that all that was said? A. Yes, I think that is all that was said.

"Q. Did you have any other talk with Mr. Phelps about it? A. I told him I was out quite a lot for Doctors and X Rays and I says 'Jay I guess I will have to sue you,' and he said 'Go ahead. That is why I carry insurance.' "

Thereupon defendant Phelps, claiming this testimony prejudicial to his rights, moved for a mistrial. The court permitted this testimony to stand and advised the jury to disregard it, to which ruling the defendant Phelps excepted. Thereafter the court instructed the jury to disregard any evidence regarding liability insurance. Loustalet here contends that the admonition and instruction of the court cured the error, if one was made.

The jurors were advised, whether fortuitously or designedly is immaterial, that Phelps, an automobile dealer, carried liability insurance. The record is silent as to whether Mayfield, a farmer, carried such insurance. In these circumstances and considering the contradic-

tory testimony as to whether Mayfield's or Kirby's negligence caused plaintiff's injuries, and the further fact that the trial was held in a farming community, such testimony was highly prejudicial and the error caused by its admission was not cured by the court's admonition and instruction. *Coe v. Van Why,* 33 Colo. 315, 80 Pac. 894; *National Surety Co. v. Morlan,* 91 Colo. 164, 13 P. (2d) 260; *Woolworth Co. v. Davis,* 41 F. (2d) 342; *James Stewart & Co. v. Newby,* 266 Fed. 287; *Simpson v. Foundation Co.,* 201 N. Y. 479, 95 N. E. 10; *Rodzborski v. American Sugar Refining Co.,* 210 N. Y. 262, 104 N. E. 616; *Wiersema v. Lockwood & Strickland Co.,* 147 Ill. App. 33; *Squires v. Riffe,* 211 Cal. 370, 295 Pac. 517; *Carter v. Walker* (Tex. Civ. App.), 165 S. W. 483; *Thompson Drug Co. v. Latham* (Tex. Civ. App.), 19 S. W. (2d) 825; *Ryan v. Simeons,* 209 Ia. 1090, 229 N. W. 667; *Miller v. Kooker,* 208 Ia. 687, 224 N. W. 46; *Atkins v. Bartlett,* 101 W. Va. 263, 132 S. E. 885; *Nolen v. Halpin-Dwyer Co.,* 225 Mo. App. 224, 29 S. W. (2d) 215; *Lewis v. Beckard,* 118 Neb. 533, 225 N. W. 462.

In *Miller v. Kooker, supra,* the court states the rule as follows:

"Casualty insurance, like other insurance, is justified as an economic provision. The chief beneficiaries in such insurance are those who have meritorious claims for injuries for which, without the insurance, there might be no responsible recourse. If the fact of the insurance is to work against the insurance company, the insurance and its beneficent purpose will destroy itself, and the principal sufferers will be those who suffer injuries which ought to be recompensed.

"The references to the matter of liability insurance were prejudicial misconduct, not cured by the plaintiff's disclaimers or the court's instructions. We are of the opinion that, in the heat of conflict, the jury had been impressed with a wrong conception of the questions for their determination and of their duties as triers of fact, and that this misconception was in no degree mitigated

by counsel's assertion, at the close, that they were asking that the verdict be not influenced because 'any verdict you may render will be a hardship upon Mr. Kooker.' The poison had long previously penetrated all of the veins and capillaries of the case.''

In *Atkins v. Bartlett, supra,* the plaintiff testified defendant stated to him that ''he was sorry the accident occurred; that it was his fault, and that he was insured and would take care of it.'' The judgment of the lower court was reversed, the court stating at page 267: ''In this case it was the plaintiff himself, and not a third party, that brought the question of insurance into the case. And this testimony was volunteered in the face of the previous admonition of the court to the effect that such information was not proper. The impropriety of such evidence is unquestionable. The only purpose it could serve was to prejudice the jury in favor of the plaintiff and against the defendant. While the learned trial judge made a proper disposition of it by ruling that it was improper and instructing the jury to disregard it, yet its effect could not be effaced from their minds. It seems clear to us that the plaintiff cannot be absolved from the effect of his own error under any of the rules we have laid down in our decisions.''

Accordingly the judgment is reversed and the cause remanded for a new trial.

Mr. Chief Justice Adams and Mr. Justice Butler concur.