## WESTERN INDEMNITY CO. v. CORDER.
### (No. 908.)

(Court of Civil Appeals of Texas. Beaumont. Feb. 23, 1923.)

**1. Trial ⊜═215—Court may instruct jury that certain answers to some issues relieves it of answering others.**

While every issue should be submitted to the jury, the court need not permit or require it to answer all the issues submitted, the established practice being to instruct it that an affirmative or negative answer to certain issues relieves it of the duty of answering certain others.

**2. Trial ⊜═352(1)—Submission of issues to be answered if previous issue was answered affirmatively held proper.**

In a workman's compensation suit, the court did not err in requiring the jury, if it answered affirmatively the issue of total incapacitation, to fix the number of weeks thereof and find whether it was permanent; the answers disposing of all the issues.

**3. Trial ⊜═193(2)—Charge held not erroneous as leading jury to believe that court thought plaintiff totally and permanently incapacitated.**

In a workman's compensation suit, a charge that, if plaintiff's injury totally incapacitated him permanently, "you need not answer any of the following questions," *held* not erroneous, as calculated to lead the jury to believe that the court thought that plaintiff had suffered total permanent incapacity.

**4. Master and servant ⊜═385(5)—"Total incapacity" defined.**

"Total incapacity" means such disqualification from performing the usual tasks of a workman that he cannot procure and retain employment (quoting Words and Phrases, First and Second Series, "Total Incapacity").

**5. Trial ⊜═118—Overruling objection to argument erroneous, if similar charge would have been erroneous.**

If a charge similar to counsel's argument would have been erroneous, it is error to overrule objections to such argument.

**6. Appeal and error ⊜═1170(1)—No reversal, unless error probably caused erroneous verdict.**

Under rule 62a (149 S. W. x), no case should be reversed unless the error complained of was calculated to, and probably did, cause an erroneous verdict.

**7. Appeal and error ⊜═1060(3)—Argument incorrectly defining term as used in court's charge held reversible error.**

In a workman's compensation suit, where the issue of total incapacity was strenuously contested, and the weight of the evidence was against the jury's finding for plaintiff, argument of plaintiff's counsel that "total incapacity" as used in the court's charge meant incapacity from following the work plaintiff was doing when injured, which the court tacitly approved by overruling defendant's objection, *held* reversible error, as influencing the jury to find a verdict based on an incorrect definition of such term, though the verdict was not so clearly against the weight of the evidence as to be clearly wrong.

**8. Master and servant ⊜═411 — Judgment of partial or total incapacity should not be so worded as to prevent future inquiry into claimant's condition.**

Unless a lump sum is awarded in a workman's compensation suit, or total incapacity is based on Complete Tex. St. or Vernon's Ann. Civ. St. Supp. 1918, art. 5246—20, the judgment should not be so worded as to prevent future inquiry into plaintiff's condition, but the court should retain jurisdiction so as to do justice in case of total incapacity following a finding of partial incapacity, or such improvement, after a finding of total incapacity, as to relieve plaintiff of such infirmity.

**9. Master and servant ⊜═417(9)—Compensation case, removed from Accident Board's jurisdiction, should be administered by court as board would.**

The court should administer a compensation case removed from the jurisdiction of the Accident Board as the board would had it retained jurisdiction.

Error from District Court, Jefferson County; D. P. Wheat, Judge.

Action by W. J. Corder against the Western Indemnity Company to set aside an award of the Industrial Accident Board, and to recover compensation under the Workmen's Compensation Act. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Orgain & Carroll, of Beaumont, for plaintiff in error.

Howth & O'Fiel, of Beaumont, for defendant in error.

WALKER, J. This was a suit by defendant in error, designated herein as appellee, against plaintiff in error, designated herein as appellant, to recover compensation under the Texas Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246 —1 et seq.). On or about the 26th day of June, 1918, appellee was employed as a ship carpenter by J. N. McCammon, a ship builder, at Beaumont, Tex., who was a subscriber under the Workmen's Compensation Act, and carried a policy of indemnity with appellant. The following agreement was made a part of the record by the parties:

"It is agreed by the plaintiff and the defendant that the defendant, Western Indemnity Company, has paid workmen's compensation insurance at the maximum rate of fifteen ($15.-00) dollars per week from July 4, 1918, up to February 8, 1919, totaling the sum of four hundred and sixty-five ($465.00) dollars.

"It is further agreed that on or about June 26, 1918, W. J. Corder, the plaintiff, was an employee of J. N. McCammon, and was injured while in the course of his employment, and that

the said J. N. McCammon carried workmen's compensation insurance with the Western Indemnity Company for the benefit of his employees; that an award had been made by the Industrial Accident Board of the state of Texas, and that within 20 days thereafter W. J. Corder gave notice that he would not be bound by said award, and in 20 days thereafter instituted this suit to have said award set aside."

The case was tried to a jury on special issues, and on their answers, to the effect that appellee was totally incapacitated, as that term is used in the Workmen's Compensation Act, judgment was entered in his favor for compensation at the rate of $15 per week for the full compensation period, less the amount paid as shown by the above agreement.

By many assignments and propositions, appellant complains of the court's charge primarily on the ground that certain issues were not submitted; that the jury was not permitted to answer said issues duly submitted, and that the charge was on the weight of the evidence, and, as worded, "was calculated to create in the minds of the jury the impression that the court was of the opinion that plaintiff had suffered total permanent incapacity." Without analyzing the pleadings of appellant, the evidence, and the charge of the court, we believe it is sufficient to say that in our judgment every issue raised on behalf of appellant was duly submitted by the court's charge.

Issues Nos. 1, 2, and 3 of the court's charge were as follows:

"(1) Was W. J. Corder totally incapacitated from work on June 26, 1918? Answer Yes or No as you find the facts to be.

"(2) If you have answered Yes to the previous question, then (a) fix the number of weeks of such total incapacity; and (b) was such total incapacity, if any, permanent? Answer as you find the facts to be.

"(3) Has W. J. Corder at any time since June 26, 1918, recovered to the extent that he has a wage earning power equal to that on the date of his alleged injury, and, if so, give the date of such recovery? Answer as you find the facts to be."

These issues were followed by the following instruction:

"You are further instructed relative to the foregoing issues that if the injury, if any, to plaintiff, W. J. Corder, rendered him totally incapacitated, as that term is above defined, and if you shall further find that such total incapacity was permanent, or if you shall find that such total incapacity to said W. J. Corder will cover a period of at least 401 weeks, or longer, dating from June 26, 1918, then and in that event you need not answer any of the following questions or any of the other questions submitted except issue No. 14 in this main charge, which issue No. 14 inquires about the average weekly wages of said W. J. Corder."

[1, 2] The other issues submitted by the charge presented the defenses relied on by appellant, who assigns error against the instruction above quoted on the ground that it was not only the duty of the court to submit such issues, but also permit the jury to answer them. We do not concur in that proposition. Every issue raised by the pleadings and evidence should be submitted to the jury, but this does not require that the court must permit or require the jury to answer all the issues submitted. When the jury has all issues before it, it is now the established practice in this state for the trial court to instruct the jury that an affirmative or negative answer to certain issues relieves them of the duty of answering certain other issues, and that a verdict may be returned under that instruction without answering all issues submitted. So in this case the answers made by the jury and accepted by the court were determinative of the case, and, in fact, negatived all defenses raised by appellant. The jury was not deprived of an opportunity to consider appellant's defenses, but with all the questions before it, under the court's charge, answered those fixing liability against it, thereby negativing all issues relied on by appellant.

[3] We do not think the charge was in any sense on the weight of the evidence, nor that it gave undue prominence to the contention of appellee, nor that it was "calculated to create in the minds of the jury the impression that the court was of the opinion that plaintiff had suffered total permanent incapacity." As said above, the court's charge was in accordance with the established practice of this state.

[4] The trial court defined "total incapacity" as follows:

"Relative to the foregoing issues you are instructed that wherever in this charge 'total incapacity' is mentioned or inquired about, it means that one must be so injured that he becomes disqualified from performing the usual tasks of a workman to such an extent that he cannot procure and retain employment."

Both appellant and appellee accepted this as a proper definition, and neither filed any exception thereto. As sustaining the court's charge, we quote as follows from 4 Words & Phrases (Second Series) 942:

"Under a benefit certificate payable in case insured should become totally incapacitated to perform manual labor, 'total incapacity' means inability to perform sustained manual labor so as to enable one to earn or assist in earning a livelihood. A condition of absolute and complete incapacity to do any manual labor ought not to be regarded as the true construction of the language of the certificate. One who has power to use his hand or hands at labor for a brief effort only, and who is lacking in power to sustain the effort for a sufficient length of time to make the result thereof of any benefit to him in the way of assisting in his support, is for all practical purposes and in every actual sense totally incapacitated from performing manual labor. Grand Lodge,

Brotherhood of Locomotive Firemen, v. Orrell, 69 N. E. 68, 69, 206 Ill. 208."

[5] As shown by bill of exception No. 1, counsel for appellee, in making his closing argument, over the objection of appellant "argued to the jury that by the term 'total incapacity' as used in the court's charge meant total incapacity from following the work he was following at the time of his injury." Appellant objected to this argument on the ground:

"That it was improper, calculated to impress the jury in the belief that total incapacity meant total incapacity to follow only the work that plaintiff was following at the time of his injury, that the argument was an erroneous statement of the law to the jury, in that by total incapacity was meant a total incapacity to perform the usual tasks of a workman to such an extent that he could not procure and maintain employment."

The bill further shows:

"The court then and there overruled the objections made by the defendant, and, turning to the jury, instructed the jury to follow the charge as given, permitting counsel for the plaintiff to continue the argument and to repeat his assertion."

The court's charge was not subject to the construction given it by counsel for appellee. Had he so instructed the jury, it would have been error. Total inability to labor, a synonymous term with total incapacity, is thus defined by 8 Words and Phrases (First Series) p. 7012:

"'Total inability to labor' does not confine the capability of the member's earning capacity to the same employment as that in which he was engaged at the time of becoming incapacitated, but requires such member to engage in any work or employment for which he is fitted, or which he is capable of performing. Baltimore & Ohio Employés' Relief Ass'n v. Post, 15 Atl. 885, 891, 122 Pa. 579, 2 L. R. A. 44, 9 Am. St. Rep. 147."

By overruling appellant's exception, the trial court, in effect, made the argument of counsel for appellee a part of his charge to the jury, thereby submitted to them an erroneous definition of total incapacity. His instruction to the jury, in the light of the facts as shown by the bill, accentuated the vice in the argument. The rule in this state, construing the effect of an erroneous argument on the law, is thus stated in the second syllabus to Railway Co. v. Harp (Tex. Civ. App.) 199 S. W. 502, an opinion by Judge Boyce:

"If a charge by the court, similar to an argument by counsel as to the law, would have been erroneous, it was error for the court not to sustain defendants' objections to the statement in argument."

In Railway Co. v. Farr, 56 Fed. 994, 6 C. C. A. 211, Judge Sanborn said:

"The jury is sworn to determine the issues of the case according to the law and the evidence given them in court, and no argument is fair which misstates the evidence, or misleads the jury as to the law."

Again, in Railway Co. v. Bennett, 69 Fed. 525, 16 C. C. A. 300, Judge Sanborn said:

"Counsel * * * ought not to indulge * * * in clearly erroneous declarations of the law when it has been announced by the court, which tend to deceive and mislead the jury and prevent a fair and impartial trial of the case." .

Again, he said in Railway Co. v. Field, 137 Fed. 14, 69 C. C. A. 536:

"A trial is not fair and impartial in which * * * the assertion or insinuation of an erroneous view of the law * * * by counsel may have had an influence favorable to his client."

[6, 7] Under authority of rule 62a (149 S. W. x) it is now the settled law of this state that no case should be reversed unless the appellate court can say that the error complained of was calculated to and probably did cause an erroneous verdict. Eastern Texas Electric Co. v. Baker (Tex. Civ. App.) 238 S. W. 336. So in applying the recognized rule, construing the effect of erroneous argument of appellee's counsel, we should not reverse this case unless we can say that it reasonably appears that it influenced the jury in their answer to the special issues submitted to them. The issue of "total incapacity" was contested most strenuously by appellant, and, had the question been tried before this court, we would have held that the preponderance of the evidence was with appellant's theory of the case; that is to say, as we construe the evidence, the weight and preponderance was to the effect that appellee was not totally incapacitated within the meaning of the Workmen's Compensation Act. The following statement of the evidence on this issue, taken from brief of appellant and not contested by appellee nor answered by any counter statement makes our conclusion clear:

Dr. Goldstein testified:

"I made an examination of Mr. Corder with Dr. Martin and Dr. Barr about January 10, 1919. I thought he had recovered at that time * * * I also saw him in October, 1918. He hadn't entirely recovered at that time, but he was improving right along. * * * Mr. Corder was also examined on April 9, 1919, by Dr. Perkins and myself. I concluded at that time that he had recovered. He was also examined on June 28, 1920, by Dr. Williams and myself. He had completely recovered at that time as far as I know. When I say he had completely recovered I mean that I couldn't find any disability."

Dr. N. A. Barr testified:

"I recall having seen Mr. W. J. Corder in consultation with some other doctors in the early part of 1919. * * * As to whether or not that disclosed any impediment with refer-

ence to the use of his limbs, we couldn't make it out; he said he had lost function, but we were unable to make it out. We examined his back, and it was normal as far as we could make out. As to whether we found any other injuries that would cause an impediment to his following the business that he had followed before, no, sir, it was all subjective, except the fracture of the arm. I don't think that his condition was such as to prevent him from following physical labor."

Dr. Nelson testified for the plaintiff:

"This abnormal position of the spine, together with the muscular weakness, the pain and tenderness of the spine leaves the patient permanently disabled to do all forms of heavy manual labor."

Dr. Morehouse, witness for plaintiff, testified:

"To some extent labor and work and exercising his muscles would create a better condition, and the pain would become better by reason of the fact that he was using them. The condition would get better to some extent. I believe he would get freer in the use of those muscles. It is natural to suppose that he would get so that he could work a little easier than he did. I don't know whether a time would come when the pain would absolutely leave him, and conditions would adjust themselves so as to give him no pain. I could not say as to that, because it might not ever get better, and he might get considerable relief. The only way we have to judge is to compare cases with each other, and it is largely conjecture as to whether he would get better, from the examination I made."

We do not mean to say, nor intimate, that the verdict is so clearly against the weight and preponderance of the evidence as to be clearly wrong. The issue of total incapacity was raised by the evidence, and we would not disturb the finding made by the jury. It was their province to judge the credibility of the witnesses and the weight to be given their evidence, but in weighing the effect of the evidence they should have had a correct definition of "total incapacity," such as that given them by the court, uninfluenced by a wrong construction of the court's charge tacitly approved by him. As we construe this record, it reasonably appears to us that the jury were influenced in finding for appellee on the construction of the court's charge suggested by his counsel, that—

"Total incapacity as used in the court's charge meant total incapacity from following the work he was following at the time he was injured."

On this conclusion the argument of counsel vitiated the verdict, and necessitates a reversal of this case.

[8, 9] Again, the judgment of the court in this case fully liquidated the appellee's claim for compensation on the theory of total in-capacity, and made no provision for a review of the facts should appellee's condition improve in the future so as to relieve him of total incapacity. Except when a lump sum is awarded, or when total incapacity is based on the provisions of article 5246—20, Complete Texas Statutes or Vernon's Ann. Civ. St. Supp. 1918, the judgment of the court should not be so worded as to prevent a future inquiry into the condition of the injured employé, but the court should retain jurisdiction so as to do justice to both parties within the spirit of the Compensation Act. It might happen that a slight injury would develop into a total incapacity, and a jury's finding of partial incapacity should not bar the beneficiary from his rightful compensation. Again, on the trial the facts might fully sustain a finding of total incapacity, and yet within a few months the condition of the beneficiary might substantially improve so as to relieve him of that infirmity. When a compensation case has been removed from the jurisdiction of the Accident Board, in our judgment the courts should administer it as the board would had it retained jurisdiction. This was the effect of our order in U. S. Fidelity & Guaranty Co. v. Parker (Tex. Civ. App.) 217 S. W. 195.

Reversed and remanded.