## CONTINENTAL OIL CO. et al. v. BARNES.

### No. 13397.

Court of Civil Appeals of Texas. Fort Worth.

Sept. 18, 1936.

Rehearing Denied Oct. 30, 1936.

Cantey, Hanger & McMahon, J. A. Gooch, and James C. Wilson, Jr., all of Fort Worth, for appellants.

W. W. Shuler and Smoot & Smoot, all of Wichita Falls, for appellee.

SPEER, Justice.

This suit was instituted by A. L. Barnes against the Continental Oil Company and Virgil Davidson for damages growing out of the alleged negligence of defendants. The material allegations of plaintiff were as follows:

On February 24, 1934, Davidson was in the employ of the Continental Oil Company, driving one of its trucks in the course of his employment. While operating the truck along a certain highway which was so constructed as to have a deep ditch on either side, and a branch or gully extending across the highway, spanned by a flat wooden bridge, Davidson negligently stopped the truck near the center of the traveled part of the highway in close proximity to the wooden bridge; that the truck was stopped at a point on the traveled part of said highway where insufficient space was left on either side to enable other vehicles to pass in safety; that the truck was not equipped with a rear-view mirror; that the driver made no effort to ascertain if another car was following him along the highway, and made no visible or audible sign or signal of his intention to bring his truck to a stop at said time and place. These and other acts of Davidson were alleged to be negligence and the proximate cause of plaintiff's injuries.

The plaintiff further alleged that he, on the date mentioned, was operating a truck on said highway hauling gravel from a nearby pit to a WPA job then under construction; that plaintiff's truck was in a good state of repair, equipped with good and efficient brakes, and that he was keeping a lookout ahead for other vehicles and objects on and along the highway, traveling at a moderate and safe rate of speed; that he saw the other truck come off of the Continental Oil Company's premises and on to the highway immediately in front of him and that he followed it about one mile, keeping approximately 50 or 60 feet behind it; that at a point near the narrow wooden bridge the driver of the Continental Oil Company's truck, without warning or signal of any kind, brought his car to a sudden stop immediately in front of plaintiff near the center of the road, and plaintiff applied his brakes and attempted to stop but, because of the suddenness with which the other truck had stopped, the plaintiff had approached close enough that he could not stop his own truck in time to avoid a collision, and to prevent this he swerved his car to the left and went out of the roadway into the ditch, and, seeing the ravine that crossed the highway immediately in front of him and realizing he must be precipitated into it, he again swerved his car to the right, bringing it out of the ditch on to the roadside, went on to the narrow bridge, blew out a tire and damaged his truck in such a way that when he arrived at the point where he dumped his gravel the water had leaked out of his radiator and his motor was ruined.

Plaintiff further alleged that, because of the negligent acts of said Virgil Davidson at the time mentioned, he (the plaintiff) was confronted with what appeared to him to be certain death or serious bodily injury, and that sudden necessary movements of his body and limbs in his effort to extricate himself from his perilous position so wrenched his body, jarred and shocked his nerves, that his mind went through such a severe shock and strain that members of his body, including his mind and heart, were so seriously affected as to cause great physical pain and mental anguish, and all have had the effect to permanently weaken

and disarrange his heart action and his circulatory system until he will never recover therefrom and be able to do manual labor or otherwise earn a livelihood.

■ Defendants answered by what is commonly known as a general denial, thus putting in issue all of plaintiff's allegations.

The case was submitted to the jury on special issues, involving all of the alleged acts of negligence by the defendants upon which testimony was offered. We think there were sufficient pleadings and evidence to warrant the submission of these issues. The answers of the jury to issues propounded were favorable to plaintiff, naming damages in the sum of $1,363, upon which answers the court entered judgment.

Defendants perfected an appeal to this court and have assigned fifty-five errors upon which they have presented fourteen points or propositions for our consideration. Several of these propositions, for the purpose of this opinion, may be grouped as presenting similar questions from which we may dispose of the case. They are: (1) That, by the form of certain issues, explanations, and conditions mentioned by the court, the jury was informed what effect its answers would have on the judgment to be rendered; (2) that the court should have submitted to the jury special issues relating to contributory negligence by the plaintiff; (3) that the matter of an insurance company being interested in the result of the suit was improperly injected into the case and that a mistrial should have been declared; (4) that the question of burden of proof was improperly submitted.

We shall dispose of the case by discussing it in the order we have classified defendants' several propositions, and refer to the parties as they appeared in the trial court.

■ Much has been written by the courts with reference to the inhibition of imparting to the jury by courts and counsel information as to the effect its findings would have on the judgment to be rendered. It is right and proper, under the provisions of our laws creating what is known as the special issue statute, that the jury answer inquiries as to facts only without a concern as to the kind of judgment that shall be entered by the court, and to this end it is improper for counsel or the trial court to apprise it of the legal effects of its answers.

In this case the court gave in his charge definitions of negligence and proximate cause in terms such as to evoke no criticism from the defendants. The special issues submitted embraced each of the alleged grounds of negligence, such as: Did the driver of the Continental Oil Company's truck stop his truck without giving a signal of his intention to do so? Did the driver of defendant's truck stop in such a position on the highway as to leave insufficient room for other cars to pass on his left hand side? Was the truck of defendant company equipped with a rearview mirror so that the driver could see vehicles approaching from the rear? Did the driver of the defendant company's truck use the mirror on his truck, if any he had, to discover the approach of plaintiff's truck? Did the driver of defendant company's truck stop at a place on the highway so as to leave a clear unobstructed space opposite his truck of at least 15 feet on the improved portion of the highway for the free passage of other vehicles?

After an explanation following each of those issues that, if answered in the affirmative, they would answer the succeeding issue, there followed an issue as to whether the act inquired about was a proximate cause of the damage alleged to have been sustained by the plaintiff. Those issues submitting whether or not the alleged acts of negligence were proximate causes were Nos. 3, 7, 10, 14, and 17. Then we quote from the charge:

"If you have answered either of special issues Nos. 3, 7, 10, 14 and 17 in the affirmative, then you will answer the following special issue, and if you have answered all said special issues in the negative, you will not answer the following special issue:

"Special Issue No. 19: What amount of money, if any, if paid now in cash, would reasonably and fairly compensate the plaintiff for his injury, if any, proximately caused by the negligence, if any, of the defendant at the time and place in question? Answer as you find the facts to be. Answer: $1,125.00."

Defendants complain that the paragraph quoted, preceding special issue No. 19, informed the jury the effect their former answers would have on the judgment to be rendered by the court.

■ It is well settled in this state that, when a case is submitted to the jury upon special issues as provided in article 2189, R.C.S., no general charge shall be given nor shall the court in any way so instruct the jury or frame the issues in a way that the jury may know therefrom what the effect of its answers shall be upon the judgment to be rendered.

■ It is difficult to comprehend the full meaning of the distinctions drawn by many of the courts on this point. It seems that there can be no harm done, and it is not reversible error if the information imparted does not disclose something the jury did not already know. Cannon Ball Motor Freight Lines v. Grasso (Tex.Civ.App.) 59 S.W. (2d) 337. Jurors of ordinary intelligence, but untrained in law, may know more about the effect of their several answers to issues than those of us who have made a study of the law are willing to give them credit for, yet the line must be drawn somewhere, and it becomes largely a question of opinion of the person speaking as to the extent of their knowledge.

In some cases the courts have held it was not error for the trial court to insert between some issues submitted instructions to the jury, in substance, that if they answered the preceding issue in the negative they should not answer the next issue, but if they answered in the affirmative they should proceed to answer the next issue. Western Indemnity Co. v. Corder (Tex.Civ.App.) 249 S.W. 316; Millerman v. Houston & T. C. Ry. Co. (Tex.Civ.App.) 27 S.W.(2d) 897 (writ refused); Traders' & General Ins. Co. v. Nunley (Tex.Civ. App.) 82 S.W.(2d) 715. But in the cases cited this conditional instruction was such as could not have afforded the information to the jury that by a failure to answer the issues specified one of the parties would have an advantage over the other.

■ The jurors in a suit for damages know the paramount issues involved are: (1) Is the plaintiff entitled to recover? (2) If so, what amount? In the first instance, the court may aid them with definitions and explanations of what is meant by certain words and expressions in the questions, but in the second instance he can be of little assistance except by the terms in which he submits the question. The juror may know, and perhaps does, that, unless some wrongful act of one person causes injury to another, the latter cannot recover damages, but we cannot say he also knows that such wrongful act is negligence and that it was the proximate cause of the injury; hence it follows that it is not error for a court to insert between such questions the instruction that if they answer the preceding question in a certain way they need not answer the next question. But we believe that, after having enumerated by several special issues the acts of defendants complained of and having followed each with the inquiries of negligence and proximate cause and upon reaching the issue of amount to insert, the charge, as the court did in this case, as quoted by us in a former paragraph of this opinion, had the effect to apprise the jury, if it had answered either of special issues 3, 7, 10, 14, and 17 in the affirmative, plaintiff could recover, and, if it had answered all in the negative, he could not recover.

A very similar charge to the one in this case was discussed by the court in Cannon Ball Motor Freight Lines v. Grasso (Tex. Civ.App.) 59 S.W.(2d) 337, 340, in which case a writ was granted but subsequently affirmed by the Commission to the Supreme Court. See 125 Tex. 154, 81 S.W.(2d) 482, 487. In that case several acts of negligence were alleged, and the trial court submitted each with the necessary preliminary issues as to negligence and proximate cause, and immediately prior to submitting the issue of amount of damages gave the following charge: "If in response to the foregoing question you have answered that the defendant's truck was operated in a negligent manner, and that such negligence, if any, caused the injury to the plaintiff, and if you have also answered that the plaintiff was not guilty of negligence contributing to the accident, then you will answer the following question; otherwise you need not answer the following question."

In this connection the court says: "From the authorities above cited, it is apparent that, if the charge complained of was a general charge, or if it informed the jury of the effect of their answers to the special issues submitted to them, it was an improper charge. We feel that the exception was well taken to this charge, and that it should not have been given over appellant's objection. In the first place, it was not necessary to tell the jury to answer issue No. 15 only in the event they found that appellant was guilty of negligence

and that appellee was not guilty of contributory negligence. The jury could have answered the amount of damage appellee had suffered, regardless of whether he was guilty of contributory negligence or whether or not appellant was guilty of negligence. * * * This charge was not a necessary instruction. The effect of it was to tell the jury that, unless they found that appellant was guilty of negligence, causing the collision, and appellee was not guilty of contributory negligence, they could not find for appellee in any amount. This is a general instruction, and also tells the jury of the ultimate effect of their answers to at least thirteen of the preceding fourteen special issues. It might be contended that this instruction coming after all but the last issue would not furnish them information until after such issues had been answered. We do not think this would keep the instruction from being harmful."

The Commission, speaking through Judge Critz, whose opinion was adopted by the Supreme Court, said on this point in the case: "Counsel for Grasso contend that it is the law of this state that it is not reversible error to instruct a jury to the effect that affirmative or negative answers to certain questions will relieve them of the duty of answering certain other questions. We agree to this contention in some instances. In spite of this, it is certainly not proper for the court to tell the jury the ultimate result of all of their answers in submitting a case on special issues. In our opinion, the instruction preliminary to question No. 15, supra, in effect did exactly that. It will be noted that the instruction directed the jury that if they convicted the defendant of negligence and acquitted the plaintiff of contributory negligence, to find the amount of the plaintiff's damages, otherwise not. Such an instruction clearly told the jury that they must find the defendant guilty of negligence, and the plaintiff not guilty of contributory negligence, in order for the plaintiff to recover. Such a charge is undoubtedly in violation of our special issue statutes. It was a general charge, and informed the jury of the result of all of their answers. On another trial the issue of damages should be submitted without the above-quoted preliminary instruction."

We therefore sustain defendants' assignments of error on this point.

Defendants complain by proper assignments of error that the court refused certain requested special issues which would have submitted to the jury the question of contributory negligence on the part of plaintiff resulting proximately in such damages he claims to have sustained. The defendants answered only by general denials. We have read plaintiff's petition carefully and have reviewed the testimony from the statement of facts and have failed to find in either anything which we consider under the rules of law in this state authorizing the submission of that issue to the jury, under the pleadings.

■■ In the absence of a plea of contributory negligence, as in this case, the rule seems to be that, if the petition of plaintiff shows a state of facts rendering him guilty of contributory negligence, before he can recover he must show additional facts upon which, if proven, he could recover, or upon the other hand, even though the petition does not disclose it, if his testimony establishes the fact that he is guilty of contributory negligence, he cannot recover, although the defendant had not plead it.

It was said in Jones v. Sunshine Grocery Co. (Tex.Civ.App.) 236 S.W. 614, 616: "It is true, ordinarily, that contributory negligence is an affirmative defense which must be predicated upon an allegation interposing it in behalf of the party who seeeks to avail himself of it, but such pleading is not necessary when it appears from the plaintiff's own showing, either in his pleadings or his proof, that his own negligence contributed to the injury. If, in the course of developing his case against the defendant, the plaintiff develops his own contributory negligence, then he will be denied a recovery regardless of whether or not contributory negligence has been pleaded affirmatively as a defense."

■ The rule above announced was followed with approval in the case of Texas Pacific Coal & Oil Co. v. Robertson (Tex. Civ.App.) 39 S.W.(2d) 912. While that case was reversed by the Supreme Court (125 Tex. 4, 79 S.W.(2d) 830, 98 A.L.R. 262) on other grounds, that holding by the Court of Civil Appeals was not criticized. The assignments raising this question are overruled.

Defendants complain and assign as error the action of the trial court in refusing

to declare a mistrial when plaintiff's counsel injected into the case evidence that an insurance company was defending the suit and procuring witnesses to testify therein. The record before us discloses that Dr. Payne, a witness who resided in another county, was testifying at the instance of defendants, and on cross-examination by plaintiff's counsel he was asked who was paying his expenses, and he replied he presumed the insurance company would, that there was no contract to that effect, but whoever was defending the suit. Whereupon plaintiff's counsel stepped to the desk of the court and requested that a mistrial be declared. The court inquired of plaintiff's counsel if he knew the insurance company was defending the suit, and at first counsel said he did not know it but, being reminded by defendants' counsel he had so informed him, the latter then said: "Yes, on second thought, I believe counsel is correct. It is a fact I think that I had knowledge of it; I am willing to let the record show that I admit that I knew that the lawsuit was being defended at the time I asked the question."

■■■ This question has been many times before the courts for determination; the general rule being that, when the information that an insurance company is defending the suit and will pay such judgment as shall be rendered is purposely injected into the case, a mistrial should be ordered and the jury discharged. Some of the decisions make the distinction that before such a result should be declared it must reasonably appear that the testimony was purposely injected into the case. Texas Cities Gas Co. v. Ellis (Tex.Civ.App.) 63 S.W.(2d) 717. But in that case it appeared the information thus imparted was not necessarily responsive to the question asked by counsel, nor that he could have reasonably anticipated that such an answer would have been given. From what we have said about the manner in which the information was brought out, it will appear that counsel for plaintiff knew the insurance company was defending the suit, and for this purpose he knew it was procuring testimony of witnesses, including Dr. Payne. To be more specific, we quote the questions and answers on this point:

"Question by plaintiff's counsel: Doctor, who brought you up here? Answer: I came in my car."

"Question: Who is paying your expenses? Answer: Well, I presume the insurance company will; there is no contract to that but whoever they are that are defending this lawsuit." To which plaintiff's counsel added: "Question: The Continental Oil Company, if that is the one, and it is?"

The answer of the witness was responsive to the question. The harm as contemplated by law and condemned by the decisions was done. Plaintiff's counsel insists that his purpose in asking the question was to, if he could, show the bias or interest of the witness. It is easy to see how he could have shown this by another form of question which would not have elicited the objectionable answer. Can it be said that the knowledge he had that the insurance company was defending the suit, that a lapse of memory in forgetting that fact should excuse him and let the defendants suffer thereby? We think not. We believe the harm was as great to the interest of defendant as if he had deliberately apprised the jury that an insurance company was defending the suit. Some of the decisions go far enough to say the injection of this kind of testimony into the case by a witness constitutes reversible error, although not called for by counsel. D. & H. Truck Line et al. v. Lavallee (Tex.Civ.App.) 7 S.W.(2d) 661, in which a writ of error was refused.

In case of The Fair, Inc., v. Preisach (Tex.Civ.App.) 77 S.W.(2d) 725, 727, while a witness, a sister of the plaintiff, was testifying and gave answers not responsive to counsel's questions, disclosing that an insurance company had sent a doctor to see her sister, the court said: "The authorities seem to condemn this reference by the witness to 'insurance' as reversible error, though not called for by appellees' counsel and volunteered by the witness. In Page v. Thomas [123 Tex. 368], 71 S.W.(2d) 234, 236, the Commission of Appeals said: 'We agree that the information about an insurance adjuster voluntarily imparted to the jury by Dr. Thomas was reversible error.' Appellees insist that the charge of the court relieved this testimony of the error complained of. On that issue in Carter v. Walker (Tex. Civ.App.) 165 S.W. 483, 487, the court said: 'No amount of admonition to the jury could remove the effects of the testimony, because it could not remove the knowledge that the suit was not one be-

tween citizens, but between a citizen and a corporation.'"

█ The damaging testimony complained of in the case from which we have just quoted came from plaintiff's witness. In this case it came from a witness called by defendants, but was in direct response to a question asked by plaintiff's counsel at a time when counsel knew the insurance company was defending the suit and procuring witnesses for that purpose. Under these circumstances, we hold reversible error was committed and sustain defendants' assignments to that effect.

█ By their forty-seventh assignment of error the defendants complain that the court erred in placing the burden of proof on them. Their assignment reads: "Because the court erred in placing the burden of proof on the defendants in special issue No. 22."

Their proposition under this assignment and upon which they discuss the question reads: "The court erred in charging on the burden of proof, (Tr. 94) in that the court charged upon whom the burden of establishing by a preponderance of the evidence lay, instead of pointing out to the jury where the burden of establishing by a preponderance of the evidence lay. Also because the question upon whom rests the burden of proof with respect to controverted issues of fact is one of law to be determined by the court and not by the jury, the province of the jury being to determine the issues according to the preponderance of all the evidence bearing thereon and further because the court failed to instruct the jury that they would determine the issues according to the preponderance of all the evidence bearing thereon."

The charge complained of reads: "The burden of proof is upon the plaintiff to establish by a preponderance of the evidence the affirmative of special issues Nos. 1, 2, 3, 4, 5, 6, 7, 8, 10, 11, 13, 14, 15, 17 and 18; and the negative of special issues Nos. 9, 12, 16 and 22; and the amount, if any, of special issues Nos. 19, 20 and 21; and unless the plaintiff has sustained the burden your answers will be to the contrary."

There were only twenty-two issues submitted, and it will be observed that by the charge given the burden of proof was placed on the plaintiff in each, and that no burden of proof in any form was placed by the court on defendants. It follows that the assignment complaining that the burden of proof was placed on defendants finds no support in the record.

As the record is presented to us, under the assignment of error mentioned it is unnecessary that we make any further comment on the manner in which the question of burden of proof is presented. It presents no fundamental error of which we should take cognizance, and certainly, since no burden of proof was placed on the defendants, but all was placed on the plaintiff, the defendants have no grounds for complaint.

There are other questions raised by defendants, such as that the court should have submitted issues to permit the jury to determine if an accident happened and whether damages resulted to plaintiff. With the disposition we have decided to make of this appeal, we feel they become unimportant at this time, and under the circumstances it is altogether probable both parties will amend their pleadings before the case is called for another trial. We therefore overrule all other assignments of error except those hereinabove sustained, and, for the reasons shown, the judgment of the trial court is reversed and the cause is remanded.

On Motion for Rehearing.

In his motion for rehearing the plaintiff has assigned alleged errors in the conclusions reached by us as expressed in our original opinion on file. Along with these assignments counsel complains that by the language used by us there is an inference deductible that he had been unfair upon the trial of the case by deliberately injecting into it the information that an insurance company was interested in its defense, and respectfully asks that we amend our findings in a way so as to remove the stigma from his name. Nothing was further from the mind of the court in what was said than to reflect on the integrity of counsel. Our reference to the fact that the objectionable information was the result of a lapse of memory of counsel should dispell this idea. The record warrants the conclusion that, although counsel had been informed that an insurance company was defending the suit, in his zeal and desire to render his client a legitimate service, and in an effort to disclose if he could, the interest and bias of the witness being

501

cross-examined, he momentarily forgot the information he had and elicited from the witness the evidence objected to. Aside from all this, we do not believe counsel would have hazarded whatever judgment he might obtain by purposely injecting the matter into the case.

Counsel for defendant likewise has respectfully complained because we stated that the insurance company was defending the suit and "procuring" witnesses for that purpose. Certainly there can be no impropriety in a party "procuring" testimony or in procuring the attendance of witnesses for the presentation of a case or its defense. We disclaim any intention of reflecting upon the good name of counsel for either party in the language used. We gladly make these statements that the record may be kept straight.

We are not convinced that we erred in the disposition made of the case, and the motion for rehearing is overruled.