## FINCK CIGAR CO. v. CAMPBELL.

### No. 13662.

Court of Civil Appeals of Texas.
Fort Worth.

Feb. 4, 1938.

Rehearing Denied March 4, 1938.

Touchstone, Wight, Gormley & Price, of Dallas, for appellant.

Ray Bland, T. R. Boone, and Kilgore & Rogers, all of Wichita Falls, for appellee.

SPEER, Justice.

S. L. Campbell sued Finck Cigar Company, a corporation, in the district court of Clay county for damages growing out of an automobile collision between plaintiff's car and that of defendant's, driven by C. B. Sikes, alleged to be the agent of defendant, and that said agent was in the discharge of his duties as such at the time of the accident.

A trial before a jury was had, and plaintiff recovered judgment, from which the defendant has appealed.

For the purpose of discussing the errors assigned by appellant, a sufficient statement of the pleadings is: That allegations were made that at the time complained of, appellee, accompanied by his wife, was driving along a public highway in said county, in a lawful manner, at a moderate and legal rate of speed, and keeping on his right-hand side of the road; that appellant, acting by and through its said agent, was likewise driving the automobile of appellant along said highway in an opposite direction, at an unlawful and negligent rate, that is, faster

than forty-five miles per hour, and that immediately prior to the time of the collision, suddenly drove his car onto his left-hand side of the road, immediately in the path of that of appellee; that because of said negligent acts, appellee's car was struck, demolishing it, killing his wife and seriously injuring the appellee; that appellee was 59 years of age and was earning a weekly wage of $45, and at that time was in sound health and had a life expectancy of approximately fifteen years; that his wife was 56 years of age, in sound health, and performed all the duties incumbent upon her as a wife to appellee. Allegations were made of damages sustained by reason of Mrs. Campbell's death, his own, injuries, hospital and doctor bills, and the value of the car.

Appellant answered with general denial, and special pleas of contributory negligence by appellee, and that appellee was not in sound health, of such a nature as would shorten his natural life expectancy. The two allegations of contributory negligence discussed by appellant in its brief were to the effect that appellee failed to sound his horn and failed to lessen the speed of his car, as he should have done immediately prior to the accident.

The case was submitted to the jury on special issues; all being answered favorable to appellee, judgment was entered by the court.

This appeal is based upon six points or propositions germane to as many assignments of error.

█ Appellant's first and second assignments challenge the findings of the jury in assessing damages for the death of Mrs. Campbell at $10,000 (a) because the testimony was insufficient to support a judgment for any amount, and (b) because the amount found was highly excessive.

The record. indicates that appellee had proven that he had been married to his wife 31 years, and that she attended to her household duties; kept the home, did her own housework, and was in the act of going further in the testimony when it was admitted by appellant's counsel in open court, and made a stipulation in the testimony, as follows: "We will admit she was a dutiful wife and did all any wife should do and what any wife was supposed to be to any man."

We think the stipulation covered about all that could have been shown had appellee been left to make his proof on the point.

There were no allegations of Mrs. Campbell's ability to earn money in any other special capacity, than as a housewife; hence, the agreement covered every phase of her earning capacity as such. We see no merit in the assignment raising the lack of testimony to support the verdict.

█ Subdivision (b) above complains of the amount as excessive and requiring a remittitur of at least half. One would be at a loss to attempt to fix an amount in dollars and cents, with any degree of accuracy, as to a loss sustained by a husband or wife in the death of the other spouse. At most it would resolve itself into a matter of personal opinion, differing, perhaps, as often as there are persons estimating it. We cannot content ourselves to think in sordid terms of the amount necessarily required by the survivor to hire done the domestic labors performed by a housewife. Nor indeed is this the test; she is not a domestic, and while as in this case she performs those menial services, she is far more than that; she is an equal partner with her husband in the marital relation; her labors in behalf of the union are not reckoned by the employer of the husband, and the latter receives the pay check, yet she has an equal interest with him in it. The law says she has earned it. Under the facts in this case, Mrs. Campbell was as good as the best; she was all to her husband that any dutiful wife was supposed to be to any man. In addition to cooking, washing dishes, and mending his clothes, she was his helpmeet, his inspiration in his life's work. Words are too feeble to encompass the magnitude of the subject. Some one has said, "There are more wife made men than self made ones." We cannot take as a standard one who may have been a financial detriment to the partnership, nor be governed by the fanciful figures set by those who claim to have lost the love of a spouse to the flaunted alluring charms of another, but a jury may, under a given state of facts, estimate the husband's losses, as well as any one else. In 33 Tex.Jur. p. 145, § 98, it is said: "Nor need the value of the wife's services be shown by specific proof with any mathematical accuracy, or in dollars and cents. 'Services', when applied to the functions of a wife, are not measured by any fixed or conventional standard of value; their value may be ascertained by a jury from their common knowledge based upon the 'aid, assistance, comfort, and society the

wife would be expected to render to or bestow upon her husband.'"

In Galveston, H. & W. Ry. Co. v. Lacy, 86 Tex. 244, 24 S.W. 269, 272, it was held that the term "service" by a wife did not fairly represent the dignity of the relation she occupied in the marital copartnership. In this connection, speaking for the Supreme Court, Judge Brown said: "The wife's labor, while equally valuable to the community, does not command a price in the market, and therefore cannot be proved by experts, as can that of the husband." Other authorities could be cited, but the question does not admit of debate.

The jury's verdict allowed appellee the amount named as damages in the loss of his wife. We see nothing in the record to indicate that any improper motive prompted them to estimate the amount at these figures. In the absence of anything to the contrary, it will be presumed that the jury arrived at this amount from honest deductions made by them from the testimony. D. & H. Truck Line v. Lavallee, Tex.Civ.App., 7 S.W.2d 661, writ refused; Schaff v. Young, Tex.Civ.App., 264 S.W. 582, writ refused; Lambert v. Lancaster, Tex.Civ.App., 259 S.W. 270, writ dismissed. Appellee cites many cases in which verdicts far in excess of this one have been sustained against the contention of excessiveness; conditions in many of them were different to those under consideration here, but they tend to show there is no fixed price established by law for the negligent death of a husband or wife. The trial court refused to grant a new trial upon the grounds complained of, and we see no abuse of discretion in his doing so. We must overrule the assignment.

Appellant's third proposition is to the effect that in the issues inquiring as to the amount of damages sustained by appellant, they were so worded as to inform the jury what the effect of their answers to preceding issues would be. After proper definitions were given of ordinary care, negligence, unavoidable accident, proximate cause, and new and independent cause, the first 14 issues submitted the various alleged acts of negligence by appellant upon which testimony was offered, along with each as a proximate cause. Issues 15 to 34 likewise submitted alleged acts of contributory negligence of appellee. In issue No. 35 was submitted the question of appellee's damages; the items being designated separately. The issue reads:

"Special Issue No. 35. Find from a preponderance of the evidence what amount of money, if any, if paid now in cash, would reasonably and fairly compensate the plaintiff, S. L. Campbell, for the injuries and damages sustained by him, if any, as directly and proximately caused by the negligence, if any, of the driver of the defendant's automobile in question. In answering you may take into consideration only such elements of damage, if any, as hereinafter enumerated, and consider no more.

"a—Loss of earnings of the plaintiff, S. L. Campbell, if any, which he sustained in the past as a direct and proximate result of such negligence, if any.

"b—(A similar inquiry was made as to future losses, if any, appellee will sustain.)

"c—Such physical pain and suffering, if any, that said plaintiff, S. L. Campbell, has suffered in the past as the direct and proximate result of the injury, if any, on May 23, 1936.

"e—(Inquired in the language of 'c' above as to doctors bills.)

"g—The loss to plaintiff of the pecuniary value, if any, of his deceased wife's services, to him, had she lived.

"h—(In similar language to 'g' above, inquiry was made as to the amount of necessary hospital bills proximately resulting from the injuries, if any.)"

Appellant's complaint is that by the expression in the charge, "for the injuries and damages sustained by him, if any, as directly and proximately caused by the negligence, if any, of the driver of defendant's automobile in question," and similar references in those subdivisions quoted, which refer to the "negligence, if any," of the defendant, the jury is told, in effect, that they must first find the defendant was negligent, in the several matters inquired about, before they can assess any amount of damages; and they were thereby told what the effect of such answers would be.

There was testimony in this case to the effect that plaintiff had had an operation and had been under a physician's care, which was shown would to some extent shorten his legitimate expectation of the time he would live. Naturally, he would not be entitled to recover losses sustained at a time when he could not reasonably expect to be living, and if for no other reason than this, his recovery was properly limited to losses sustained because of the negligence of appellant; this, too, would be true, re-

gardless of how long he would be expected to live. It does not follow that because the jury was informed that if appellant was negligent, the appellee could recover; if the jury had found appellee guilty of contributory negligence proximately causing the injury, or that the accident was unavoidable, or that the acts found by them to constitute negligence were not proximate causes of the injuries, there could have been no recovery, irrespective of the amounts named in response to the several inquiries.

It would have been improper for the court to ask the jury to name the amount of damages suffered by appellee for the death of his wife, his own physical suffering, and so forth, without in some way limiting it to the proximate results of any wrongful acts of the appellant. From our point of view, it seems that such a limitation was favorable to appellant. The appellee could not recover damages for something not caused by the negligence of appellant. The physical condition of appellee could well have entered into the amount of damages suffered and yet appellant was in no way responsible for this; his physical condition was an issue, under the facts, and it was proper to observe it in the charge.

The definition of negligence, as contained in this charge, was a correct one, and, when stripped of its legal phraseology, means to the average juror, that negligence is an inexcusable wrong done by one to another, either by acts of omission or commission, resulting in damages to the latter. Every man who is competent to perform jury service knows that a person will not be penalized by law when he has done no wrong. However, the well-settled definition of negligence can scarcely be improved upon, nor should the rule that jurors shall not be informed of the effect of their answers to issues be infringed. We said in Continental Oil Co. v. Barnes, 97 S.W.2d 494 (approved by Supreme Court in refusing writ) that it was not a reversible error to apprise the jury of what it already knew. We sustained an assignment of error in that case to the charge, because it violated the rule against informing the jury of the effect of its answers; but there the objection was based upon the fact that the court had conditionally submitted the issue of damages provided the jury had previously found that the alleged negligent acts were proximate causes of the injuries sustained. We followed the rule announced in the case of Cannon Ball Motor Freight Lines v. Grasso, Tex.Civ.App., 59 S.W.2d 337, Grasso v. Cannon Ball Motor Freight Lines, 125 Tex. 154, 81 S.W.2d 482, in which a limitation on the submission of the issue of damages was based upon a previous finding that the acts were both negligent and a proximate cause. In the instant case the charge is not open to either of the objections raised in those two cases.

In the case of City of Wichita Falls v. Phillips, 87 S.W.2d 544, 547, an issue involving almost the identical language as the one here was before this court, and while the assignment was overruled, it was primarily because no objection to it was raised before its submission; Chief Justice Dunklin, speaking for the court, drew a distinction between that case and Grasso Case, supra, as we have done here, and added: "Nor do we believe that the erroneous instruction now being considered was of such a nature as to constitute fundamental error and therefore require a reversal."

It is a well-settled rule of law in this state that isolated parts of a charge may not be criticised in a way as to require a reversal of the case if the charge taken as a whole and thus considered relieves it of the apparent errors when considered separately. Texas Electric R. R. Co. v. Jones, Tex.Com.App., 243 S.W. 980.

In the light of the authorities cited, and the elements entering into those cases, shown not to exist here, and taking the charge as a whole, we hold it is not subject to the assignment urged, and we therefore overrule it.

Appellant's fourth assignment of error raises the question of injecting into the case the fact that appellant carried indemnity insurance. The matters complained of arose in this way: The witness, C. B. Sikes, was the driver of the car of appellant and for whose negligence appellee sought to hold his principal in damages; his version of how the accident happened was very material to appellant, in matters of his own negligence and that of appellee's contributory negligence; he was seriously injured in the accident, and, admittedly, his mind had been impaired thereby; that his depositions had been previously taken and at that time his memory was vague about the matter; upon the trial he testified rather definitely in a manner favorable to appellant, and being cross-examined by appellee's counsel concerning how he was then able to detail facts about which he

could not tell when his deposition was taken, these questions and answers appear in the record:

"Q. You say your memory for a while was not good concerning the details of the accident? A. That is right.

"Q. At the time of taking of the deposition did you have a recollection then what you told here? A. Yes, sir, I did some of it.

"Q. And ever since that time you have had about the same recollection as you have now? A. Probably a little bit improved.

"Q. And the improvement has come from what? A. Thinking about it.

"Q. And talking about it? A. Yes, sir.

"Q. And listening to others talking about it? A. Oh yes, some of that entered into it.

"Q. Have John Touchstone (counsel for defendant) or this other boy talked to you about it? A. I never saw Mr. Touchstone or this other boy until last night.

"Q. But you have seen other people? A. There has been very few talked to me about it representing the company or insurance company either one."

At this juncture appellant moved the court to declare a mistrial and discharge the jury because of the developments in the testimony shown; the refusal by the court to grant the request is made the ground for the assignment.

We do not believe the contention falls within the rule inhibiting the intentional, negligent, or careless injection of that issue into a case for the purpose of informing a jury that such judgment as shall be entered will fall upon an indemnifying insurance company instead of the defendant.

▪ This subject has received much consideration by the various courts of this state and the question has been most frequently determined upon whether or not the information came into the case by mere inadvertence or deliberation, or even carelessly injected into the case by plaintiff, resulting detrimental to the rights of the defendant, protected by insurance. Some of the early cases turn upon the point that where it does not appear that defendant's rights were affected, the error will be considered harmless under rule 62A for Courts of Civil Appeals. We think that the weight of authorities in this state which require a reversal because of the information getting before the jury is based upon (1) the party who brings the question into the case, and (2) if by plaintiff, his manner and motive in doing so, whether intentional or by accident which he could not reasonably foresee, and whether it comes to him or his counsel from a witness not in response to an inquiry made. We have seen no case, and we believe there is none, where defendant puts the issue in evidence, that he would be justified in · taking advantage of his own act. As a general thing, it may be said that such harmful effect as it carries is the same, regardless of how it becomes known to the jury.

Making known to the jury that a defendant is protected against loss by indemnity insurance, by deliberate arguments by counsel, and inquiries of witnesses by plaintiff, whose responses may reasonably be construed to have been anticipated from the questions asked, has been often condemned by the courts. Page v. Thomas, 123 Tex. 368, 71 S.W.2d 234; Lone Star Brewing Co. v. Voith, Tex.Civ.App., 84 S.W. 1100; Levinski v. Cooper, Tex.Civ.App., 142 S. W. 959; Fell v. Kimble, Tex.Civ.App., 154 S.W. 1070; Carter v. Walker, Tex.Civ. App., 165 S.W. 483, writ dismissed; Continental Oil Co. v. Barnes, Tex.Civ.App., 97 S.W.2d 494, writ refused.

But in Humble Pipe Line Co. v. Kincaid, Tex.Civ.App., 19 S.W.2d 144, writ refused, it was held that a question asked by counsel, like this, "Was there an examination made at any time, of your own knowledge, by Dr. Dixon for the insurance company?" which upon objection was withdrawn, and the jury instructed not to consider the question, presented no error.

In Jimmie Guest Motor Co. v. Olcott, Tex.Civ.App., 26 S.W.2d 373, writ dismissed, inquiry was made by counsel of plaintiff's witness about a written statement, purporting to have been made by her, if she had made the statement, and she replied: "Yes, sir, I made that statement to the insurance adjuster." It was held not to constitute error. The court concluded that no harmful effect appeared in the record, and that the statement was inadvertently made by the witness. The part of the answer objected to was not responsive to the inquiry made, nor could counsel have reasonably anticipated she would add the nonresponsive part to the answer. Cited as supporting the holding are the cases of Horton v. Benson, Tex. Civ.App., 266 S.W. 213, specifically ap-

proved by the Supreme Court in 277 S.W. 1050; Russell v. Bailey, Tex.Civ.App., 290 S.W. 1108, writ dismissed; Allen & Co. v. Shook, Tex.Civ.App., 160 S.W. 1091, writ refused, and other cases. We have read these cases and find they support the rule announced.

In Russell v. Martin, 121 Tex. 488, 49 S.W.2d 699, while Dr. Braswell was testifying as a witness at the instance of defendant, he was asked, on cross-examination by plaintiff's counsel, at whose instance he made an examination of the injured party. The witness answered: "I examined her for Mr. Brown * * * (plaintiff's counsel)—some insurance company, I don't remember." To this testimony objection was made and the question of whether or not it constituted reversible error was certified to the Supreme Court. That court found that counsel who propounded the question did not know that any insurance company was interested in the case, and that part of the answer referring to some insurance company, was voluntary upon the part of the witness, and there was nothing to indicate that the jury was, in any way, influenced by it, and so answered the certified question.

Some of the cases in which the insurance issue has been improperly injected into the case, requiring a reversal, are Texas Power & Light Co. v. Stone, Tex.Civ.App., 84 S.W.2d 738, writ refused; and Continental Oil Co. v. Barnes, supra, writ refused. The same principle was announced in D. & H. Truck Line Co. v. Lavallee, Tex.Civ.App., 7 S.W.2d 661, writ refused, but in the latter case no reversal was ordered, for the reason, as stated by the court, it did not appear that any harmful effect was had on the judgment rendered; that the judgment was not excessive and it thereby negatived the reasonable inference that it did have that effect; citing Court of Civil Appeals Rule No. 62A and Golden v. Odiorne, 112 Tex. 544, 249 S.W. 822.

■ The distinction between the cases mentioned in this opinion, in which reversals were ordered, and the one now under consideration, lies in the fact that the issue of insurance in the former was purposely and deliberately brought out by plaintiffs, or was done carelessly with full knowledge that an insurance company was defending the suits, and the answers of witnesses in this regard were responsive to the inquiries made. Upon the other hand, in this case the objectionable answer was made by the witness, Sikes, the agent of the defendant corporation, not in response to the question asked, and counsel could not reasonably have assumed that he would add that voluntary statement to his answer. Appellant, a corporation, could only speak and act through its agents; Sikes was such agent, and if such a voluntary statement could disrupt the trial of this case by voluntarily injecting that issue into the case, then any other defendant under similar circumstances could defeat a trial by doing likewise. We do not think such is the law of this state.

In line with Russell v. Martin, supra, and D. & H. Truck Line Co. v. Lavallee, supra, we have found the judgment was not excessive, and fail to find any evidence of an improper influence exerted upon the jury on account of the presence of the issue of insurance, and, for this further reason, we are inclined to the opinion reached.

We have only cited and commented upon a few of the many cases which have discussed the point now before us, but sufficient we think to support our conclusions reached that the issue of insurance was not injected into the case by the plaintiff, either intentionally, negligently, or even carelessly, and that it was a voluntary statement made by the witness, Sikes, not in response to a question asked, nor could it have been reasonably anticipated by counsel. We overrule the assignment.

■ Fifth and sixth assignments of error complain that the jury answered certain special issues when there was no evidence to support the answers. By reference to the issues, the answers to which complaint is made, we find they presented defensive matters plead by appellant, and the burden of proof was placed upon it to support a finding in its favor. The answers were against appellant's contention, which means that it did not discharge that burden. We see no merit in a claim that the answers were without support in the testimony. It is not claimed that appellant offered testimony in support of these particular allegations of contributory negligence, and that the jury disregarded it. It is argued, however, that the negative answers indicated a prejudice or bias brought about by something that had happened in the case. From what we have said it will be seen that no matter complained of was of such a nature as to bring

354

about an improper feeling in the minds of the jurors, and since it is not contended that appellant supported the issues by proof, that appellee was guilty of contributory negligence, we rather believe the jury answered the issues according to the testimony before them, than to impute an improper motive not disclosed by the record. There is no merit in this contention, and the assignments are overruled.

The judgment of the trial court is in all things affirmed.