## ARRENDELL et al. v. WELLS.

### No. 3812.

Court of Civil Appeals of Texas. Beaumont.

Feb. 25, 1941.

Rehearing Denied March 5, 1941.

Will R. Saunders, Claude Williams, and W. E. Johnson, all of Dallas, and Bill Daniel, of Liberty, for appellants.

Campbell & Foreman, of Livingston, and P. C. Matthews, of Liberty, for appellee.

O'QUINN, Justice.

Frank Wells, the son of appellee, Mrs. Anna Wells, was killed on the 14th day of September, 1938, in a collision on highway No. 35 in Liberty county, between a logging truck owned and operated by appellant Allen Arrendell, driven by his em-

ployee, C. A. Morrow, and a lumber truck owned and operated by Garrison Lumber Company, driven by its employee, C. W. Whitehead. At the time of the collision Frank Wells was riding in the lumber truck as a passenger. This suit was brought by appellee against appellants for the damages suffered by her in the death of her son. Answering special issues, the jury convicted appellants of certain acts of negligence plead against them, and acquitted Frank Wells of the acts of contributory negligence plead against him. The jury also found that the collision was not the result of an unavoidable accident, and assessed appellee's damages at $7,000. Judgment was for appellee against appellants for the damages assessed by the jury, together with the additional sum of $161.75, the agreed amount of the funeral and other expenses, from which appellants have prosecuted their appeal to this court.

As acts of negligence and proximate cause of the collision, the jury found that appellant Morrow, at the time of the collision, was operating the logging truck: (a) on his left-hand side of the highway "when the highway was not clear and unobstructed for a distance of at least fifty yards ahead"; (b) that the truck was "being driven by him at a rate of speed in excess of 25 miles per hour at the time of the collision"; (c) that he attempted to turn the truck to the left on the intersecting road; (d) that he "failed to drive the truck to the right-hand side of the highway past the center of intersecting road before undertaking to turn to the left on said road"; (e) that he was guilty of negligence in undertaking "to turn the truck to his left on the intersecting road, without first ascertaining that there was sufficient space for such movement to be made in safety"; (f) that he "was guilty of negligence in operating the truck at a high, dangerous and reckless rate of speed at the time of the collision"; (g) that he was guilty of negligence in failing to keep a "proper lookout"; and (h) that he was guilty of negligence in failing "to give any visible signal of his intention to turn to the left immediately before undertaking to do so." The jury further found that Whitehead, the driver of the lumber truck, "did not fail to keep a proper lookout for vehicles approaching"; that he "was not driving the lumber truck at an excessive rate of speed under all attending facts and circumstances"; that he "did not fail to keep a proper lookout for other vehicles on the

highway"; and that he "did not have sufficient time to drive the lumber truck operated by him far enough to the left to have avoided the collision." The jury further found that "Frank Wells did not fail to keep a proper lookout for other vehicles approaching on the highway"; that "the failure on the part of Frank Wells to warn Whitehead of the position of the truck driven by Morrow on the highway was not negligence on the part of Frank Wells." Appellants have no assignments of error against these findings of the jury, on the ground that they were without support in the evidence or against the overwhelming weight and preponderance of the evidence.

We overrule appellants' proposition, as being without support in the evidence, that the court erred in refusing to submit their requested issues: (1) discovered peril as against the driver Whitehead "as the sole proximate cause of the collision"; (2) failure of Whitehead "to keep his truck under proper control, at and immediately prior to the time of the collision," as "the sole proximate cause of the collision"; (3) the failure of Whitehead "to apply the brakes on his truck and bring the same to a stop before the collision," as "the sole proximate cause of the collision"; (4) the act of Whitehead in continuing "to drive the lumber truck in the same way and manner after seeing and observing Morrow turn left on the highway," as "the sole proximate cause of the collision."

There was no evidence supporting appellants' requested issues 4 and 5, "making inquiry as to whether or not at and immediately prior to the time of the collision, the defendant Morrow was acting under an emergency, defining such term, and also whether or not he acted as a person of ordinary care and prudence would have acted under the same or similar circumstances, after the emergency arose."

■ The court made the following submission of unavoidable accident:

### Special Issue No. 21:

"Do you find from a preponderance of the evidence that the collision of the truck, so driven by the said C. A. Morrow, with the truck in which Frank Wells was riding, on the occasion in question, was not the result of an unavoidable accident?

"You will answer this question 'It was not the result of an unavoidable accident,' or 'It was the result of an unavoidable accident.'"

The court's submission of that issue has support in the following authorities: Sproles et al. v. Rosen et ux., 126 Tex. 51, 84 S.W.2d 1001; Sproles Motor Freight Lines et al. v. Juge, Tex.Civ.App., 123 S.W.2d 919. The definition of unavoidable accident submitted by the charge has support in the following authorities: Woodward et al. v. Murphy, Tex.Civ.App., 29 S.W.2d 828; Wichita Valley Ry. Co. v. Minor, Tex.Civ.App., 100 S.W.2d 1071, and cases therein cited; Sherwin-Williams Co. of Texas v. Delahoussaye, Tex.Civ.App., 124 S.W.2d 870. Appellants' exceptions to the definition of unavoidable accident on the ground that the evidence raised the issue that the collision could have been proximately caused by the negligent acts of other persons than Morrow, the driver of the logging truck, and the deceased is overruled, as without support in the evidence; there was no evidence convicting Whitehead of negligence as the sole proximate cause of the collision. The authorities cited above in support of the issue of unavoidable accident deny appellants' proposition, "that said issue, when taken in connection with the instruction following the same, as to how to answer such issue, was confusing and misleading to the jury, and said issue as submitted contained a reasonable doubt of the clearness and understandableness of the issue by the jury, and the jury was not told clearly and understandably upon whom properly rested the burden of proof."

In special issue No. 20, the court made the following submission of appellee's measure of damages:

"What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence will fairly and reasonably compensate the plaintiff, Mrs. Anna Wells, for the damages, if any, sustained by her by reason of the death of her son, Frank Wells?

"You will answer this question by stating the amount in dollars and cents, if any you find.

"In passing upon the foregoing issue, you are instructed that you may take into consideration the following elements of damage and none other:

"(A) The reasonable present fair cash market value of the loss of service of a minor, Frank Wells, if any you find from a preponderance of the evidence, Mrs. Anna Wells will in all reasonable probability sustain by reason of the death of the said

Frank Wells on the occasion in question, from the date of his death to the time he would have reached the age of twenty-one years, and in this connection, you are instructed that by 'loss of service' of the minor is meant everything that could be valued in money, and would include the personal service, if any, rendered his mother in and about the home, as well as the money earnings, if any, of said minor. And in connection therewith, you are further instructed that under the law that plaintiff, Mrs. Anna Wells, was legally bound and obligated to support and maintain said minor during his minority, and she is only entitled to recover damages for the loss of the services of said minor, if any, until he would have reached the age of twenty-one years, less the reasonable cost of support and maintenance of said minor, during his minority.

"(B) The present cash market value of the loss, if any, of such monetary contributions, if any, as you find from a preponderance of the evidence, Frank Wells would, in all reasonable probability, have voluntarily made to plaintiff, Mrs. Anna Wells, after reaching the age of twenty-one years, had he lived.

"You are further instructed that you must not allow anything as damages for grief, loss of society, companionship or mental suffering of Mrs. Anna Wells by reason of the death of her son, Frank Wells."

Appellants' proposition against this charge is that the court erred "in failing to affirmatively instruct the jury in connection with Special Issue No. 20 relating to the amount of damages, that the damages must be a direct result of the negligence of the defendant, C. A. Morrow." Appellee's cause of action was for damages suffered by reason of the death of her son. The elements of damages submitted by the jury were a direct result of the negligence "of appellants" which proximately caused the death of her son. The nature of appellee's cause of action distinguishes it from the cases cited by appellants in support of their proposition. Finck Cigar Co. v. Campbell, Tex.Civ.App., 114 S.W.2d 348, affirmed Commission of Appeals, 134 Tex. 250, 133 S.W.2d 759; Anderson v. Reichart, Tex. Civ.App., 116 S.W.2d 772, writ dismissed; Standard Paving Co. v. Pyle, Tex.Civ.App., 131 S.W.2d 200.

Appellants' assignments against the special issues submitting the issue of "negli-

**310**

gence per se" become immaterial in view of the findings of issues of common-law negligence and proximate cause.

 We give special issue No. 5:

"Do you find from a preponderance of the evidence that the operation of said truck by C. A. Morrow at the rate of speed in excess of twenty-five (25) miles per hour at the time of the collision between the truck so driven by C. A. Morrow and the one in which Frank Wells was riding, was a proximate cause of the collision of said vehicles?

"You will answer this question 'yes' or 'no.'"

The assignment against this issue is that it assumed "the existence of a controverted issue of fact" that Morrow "was operating the truck at a rate of speed in excess of twenty-five miles per hour at the time of the collision." This assignment is overruled. Issue No. 4 submitted the rate of speed made the basis, of issue No. 5: "Do you find from a preponderance of the evidence that C. A. Morrow was operating the truck so driven by him at a rate of speed in excess of twenty-five (25) miles per hour at the time of the collision between the truck driven by him and the one in which Frank Wells was riding?"

Issue No. 5 was to be answered only if the jury had answered issue No. 4 "Yes." This same construction of the issues denies appellants' exceptions against special issues Nos. 11, 13, 17, and 19.

The verdict in favor of appellee for $7,000 was not excessive. Appellee was a widow; her husband died in 1929. She had two children older than Frank, one married and the other in the army. Frank lived with her; would have been twenty-one years the May after his death; he had been out of school eighteen months; he worked around the farm and for truck farmers; he worked in the "tree army" for $30 a month—sent appellee $25 a month; for the three months Frank was out of the tree army, immediately prior to his death, he worked on a truck farm for Mr. Monroe —got a dollar and a half a day, which he brought home and gave to appellee; he always said he was not going to get married; he was obedient to appellee. Shortly before his death he made a visit to his uncle's home at Goose Creek; when he returned, he left home again going to a job; he was going to give his money to appellee; he was going to fix up the place and send the younger children to school; he left home about 6:30—"the next time I saw him he was dead"; he was a single man and had never been married. It would serve no useful purpose to quote additional testimony on this issue.

We have not reviewed the testimony on the controlling issues because the jury's findings on the fact issues submitted by the charge are not controverted, and the findings of the jury sufficiently explain the nature of the accident, and make it unnecessary to review the testimony as against appellants' requested issues.

The judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.